Roadway Express, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs February 3, 1984, to Judges MacPhail, Doyle and Blatt, sitting as a panel of three.

*Richard L. Bush*, for petitioner.

*Richard F. Faux*, Associate Counsel, with him *Richard L. Cole, Jr.*, Chief Counsel, for respondent.

OPINION BY JUDGE BLATT, March 27, 1984:

Roadway Express, Inc. (employer) appeals here an order of the Unemployment Compensation Board of Review (Board) which reversed a referee's decision and granted benefits to the claimant, Scott B. Miller.

The claimant had been employed as a dock worker for approximately three years and two months, one condition of his employment being that he be on call 24 hours per day, seven days per week. This "on call" requirement, however, was not without parameters, which will be discussed later. During his employment, the claimant accumulated a record of absenteeism for reasons such as failing to be available for work when contacted and refusing work for "invalid" reasons, for which he received verbal and written warnings as well as three disciplinary suspensions, the last suspension coming on November 2, 1980 and continuing for five days. On December 2, 1980, he was again absent from work due to his failure to receive a work call, and he was subsequently discharged.

The referee denied benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Special Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e) (willful misconduct). The Board reversed and granted benefits, reasoning that the "twenty-four (24) [hour] on call rule is per se *unreasonable* and the claimant's refusal to not be available on the dates in question must be considered *justified* and his actions do not rise to the level of willful misconduct." (sic) (Emphasis in original.)

The question presented for our review, therefore, is whether or not a work policy requiring an employee to be on call for twenty-four hours per day, seven days a week, subject to certain restrictions is unreasonable and, therefore, a defense to a charge of willful misconduct.

We have previously defined willful misconduct as a wanton and willful disregard of the employer's interest, a deliberate violation of rules, a disregard of standards of behavior which an employer can rightfully expect from his employee, or negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations. *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 90, 309 A.2d 165 (1973). We have also held that unemployment compensation will be refused unless the employee proves that his refusal to adhere to the employer's rules and policies was reasonable under the circumstances. *Simpson v. Unemployment Compensation Board of Review,* 69 Pa. Commonwealth Ct. 120, 450 A.2d 305 (1982). And, our scope of review, where the party with the burden of proof failed to prevail below, is to determine whether findings of

fact are consistent with each other and with the conclusions of law and can be sustained without a capricious disregard of competent evidence. *Partsch v. Unemployment Compensation Board of Review,* 64 Pa. Commonwealth Ct. 293, 439 A.2d 1331 (1982). The burden of proof, of course, is upon the employer to prove that the discharge of the employee was for willful misconduct. *Hadvance v. Unemployment Compensation Board of Review,* 65 Pa. Commonwealth Ct. 447, 442 A.2d 862 (1982).

*Dick v. Unemployment Compensation Board of Review,* 53 Pa. Commonwealth Ct. 285, 417 A.2d 841 (1980), controls the resolution of the issue here concerned. In *Dick,*[1] we held that an employee subject to employment conditions requiring him to be on call twenty-four hours per day, seven days per week until he had worked forty-hours, to "book off" if unable to work (call the employer and inform him that he could not work), and to be at home to receive a telephone call on two hours notice to report to work, was guilty of willful misconduct when he had four prior suspensions for failing to meet work conditions, because the employer had received a busy signal on three occasions when telephoning the claimant to tell him to report to work.

Here, the Board made a finding of fact that the claimant was required to be on call 24 hours per day, seven days per week[2] and that this was "per se unreasonable." Our review of the record, however, indicates that this rule was subject to restrictions, which are exemplified clearly in the following testimony in the record:

---

[1] The claimant in *Dick* was also employed by the employer here; *i.e. Roadway Express, Inc.*

[2] *See* Finding of Fact No. 2.

QEL: While the rule or requirement for standard of behavior or conduct ah is referred to as the 24 hour a day, 7 day a week on call rule or requirement, are there not certain parameters or restrictions with regard to that rule.

AEW: Yes.

QEL: Regarding all material times that had been self employed by this employer?

AEW: Yes ah ... or when there also is a 7 day week, *the employee is only permitted to work 5 days out of 7.*

QEL: Is this part of the contract that you have, part of the bargaining agreement?

AEW: This, this is for the collective bargaining agreement that we're a party to and also as far as 24 hour daily requirement, ah there are many cases where the ah employee would be called out at midnight. Ah *he works his 8 hours and he's off for the following 16 hours,* at midnight he would become, ah he would go back on the board so to speak and eligible for a call. So *the rule states that he is required to be available 24 hours a day but in fact after he works his 8 hours on that given day, he's off the balance of the day* until midnight when what we expressionly use when the wheel turns.

QEL: Mr. Kosnowski you refer to ah when he's working 8 hours. In addition to the restriction or parameter on the 24 hour on call requirement of being of being, the claimant could not work more than 5 calendar days in a calendar week. You indicated that he has his 8 hours. Is that also a further restriction on any given day that his shift cannot excede 8 hours?

AEW: Yes, we, we, we consider the restriction because any hours worked in excess of 8 would be an overtime. So we only allow an employee to work 8 hours. Which is the guarantee or the, the contract language. Eight hour guarantee.

QEL: You indicated the contract language ah restricts an employee from working more than 8 hours during a given shift and more than 5 days during a given calendar week.

AEW: Yes ah . . .

QEL: Which would be a total of 40 hours.

AEW: Correct.

QEL: Okay. And within your personal knowledge as assistant terminal manager, has that been to practice as a terming condition and work rule during all material times with this employee, the claimant as a dock work (Inaudible)?

AEW: That has always been that ah requirement.

QEL: Ah when we talk about a work week or calendar week, ah does that commence and end with regard to this type of employee on a certain day of the week?

AEW: Yes ah for our call board employees, their work week starts on Tuesday and it runs through Monday.

QEL: Your honor I want to refer to the ah reproduced record and petition ah a brief for the petition that was before the Commonwealth Court and it corporates the note to testimony ah before you and in there it specifically sets forth ah in the Notice of Testimony, of April 17, 1981, specifically pages 5 and 6, the claimant acknowledged that he understood his work

week, it began on a Tuesday and ends on a Monday and that once you have your 40 hours in, your 5 days, 8 hours per day, you know that the earliest time when you could next be called would be that following work week which would begin on Tuesday. We would submit that's further, a further restriction of parameter, a clarification of the 24 hour on, the day on call requirement. Ah with regard to the further clarification and restriction on the 24 hour on call requirement, ah in addition to being 5 days, no more than 5 days a week, certain day your calendar week begins, in 8 hours on a given shift Mr. Kosnowski. Ah is there also an opportunity when the claimant, employee is called for work ah to book off and if so, could you please describe the term book off?

AEW: Okay. When we find out we need men in addition to our shifts, we will call employees between ah 1 hour, 1½ hours to 2 hours prior to their requirement. If an employee is unavailable for work, he has the option to book of (sic) or call us and place himself or take himself out of service. It may be for any, any number or reasons, personal reasons, illness or whatever the reason may be. Ah that's his option. Ah but when we call him for work, we expect him to be available because ah if he would book off when we placed the call, we we would not permit it. Because ah we feel he would be trying to select a starting time. But the event he becomes ah he has, he has a reason ah to take himself out of service, all he has to do is pick the phone up and tell us that he is not available for work at that time. And then when he becomes available, he is required to

call and say I'm available. So an employee can take off 24 hours or 48 hours or, or 72 hours, whatever the reason may be. If he needs more time, he comes to the office and, and contacts me or another assistant manager for those arrangements.

[Reproduced Record at 43a-45a.]

The employer's on call policy here was clearly of the type determined to be permissible in *Dick*. And, inasmuch as the claimant repeatedly violated the policy, as is evidenced by his suspension record, we will, therefore, reverse the Board and deny benefits in accordance with Section 402(e) of the Law, 43 P.S. §802(e) (willful misconduct).

### ORDER

AND Now, this 27th day of March, 1984, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby reversed and, consequently, benefits to the claimant are hereby denied.